UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 89 CR 00908-25 |
| | ) | |
| **SAMMY KNOX** | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Sammy Knox was convicted by a jury in 1997 of a number of crimes involving the El Rukn street gang. Knox was sentenced to a ten-year term on a murder conspiracy count and to two life sentences, one each for racketeering ("RICO") conspiracy and narcotics conspiracy. Knox now moves for a reduction of his sentence under 18 U.S.C. § 3582(c)(2) [5785]. He contends that Amendment 782 to the United States Sentencing Guidelines has retroactively lowered the sentencing range on both his narcotics conspiracy count and his associated RICO conspiracy count. In the alternative, Knox seeks compassionate release [6060] from the remainder of his life sentences under § 3582(c)(1)(A) based on the COVID-19 pandemic and his underlying health conditions. For the reasons stated below, the court denies Knox's motion to reduce his sentence and withholds judgment on his compassionate release motion pending review of Knox's medical and disciplinary records.

**BACKGROUND**

On October 26, 1989, Defendant Knox and 37 codefendants were indicted and charged with crimes associated with the El Rukn street gang. *See United States v. Henry Andrews*, No. 89 CR 908, Dkt. #1, 360. After he was convicted by a jury, Judge Zagel of this court imposed a ten-year sentence on a murder conspiracy count, a life sentence on a RICO conspiracy count,

1

and a second concurrent life sentence on a narcotics conspiracy count.[1] (Knox Sentencing [5257] at 1–2.) The government contends that the predicate acts underlying the RICO conspiracy charge consisted of two murders, a conspiracy to commit murder, and a narcotics conspiracy (Govt. Resp. [5808] at 2), but Judge Zagel did not clarify during sentencing whether the RICO conspiracy life sentence stemmed from underlying drug charges, underlying murder charges, or both. (*See generally* Sentencing Tr. [5170].) Instead, he explained that there was "more than one way to get to" a life sentence on these charges, "[s]o I don't think we have to pause to consider which of the variety of ways we arrive at" a mandatory life sentence because "I think we pretty much arrive at [a mandatory life sentence] . . . no matter how one calculates it." (Sentencing Tr. at 7:3–10.)

Knox contends that at sentencing, Judge Zagel held Knox accountable for a drug quantity of 10 kilograms of heroin, resulting in a Base Offense Level of 36 under the then-applicable 1997 Sentencing Guidelines. (Knox Mot. at 3.) With two added points for possessing a firearm, U.S.S.G. § 2D1.1(b)(1), and another four points for Knox's leadership role, *id.* § 3B1.1(a), Knox contends he was at an adjusted offense level of 42 and, at Criminal History Category III (Knox Mot. at 3 n.1), facing a guideline sentence of 360 months to life. U.S.S.G. Ch. 5, Pt. A. Knox asserts that Judge Zagel gave him a life sentence on the RICO conspiracy count. (Knox Sentencing at 1–2.)

The government's account of the sentencing differs. According to the government, the jury found Knox responsible for three racketeering acts of murder, each of which carried an

---

[1] The sentencing document indicates that Judge Zagel awarded a life sentence for the murder conspiracy charge and a ten-year sentence for the narcotics conspiracy charge. (Knox Sentencing at 1–2.) This appears to be a typographical error of the sort that the Seventh Circuit corrected for Knox's co-defendant in *United States v. Boyd*, 208 F.3d 638, 649 (7th Cir. 2000), *vacated*, 531 U.S. 1135 (2001) (correcting "clerical mistakes" in judgments for two of Knox's co-defendants for whom the district court had accidentally transposed a life sentence with another sentence on two separate counts). Both parties here appear to agree that the life sentence was imposed for narcotics conspiracy, and the ten-year sentence for the murder conspiracy charge. (Knox Mot. at 3–4; Govt. Resp. [5808] at 2.) This makes sense given that murder conspiracy, under 18 U.S.C. § 1959(a)(5) (previously 18 U.S.C. § 1952B(a)(5)), carries a maximum sentence of ten years.

offense level of 43 and when combined as directed under U.S.S.G. § 3D1.4, resulted in a combined offense level of 51. (Govt. Resp. [5808] at 4–5.) Such a calculation would be consistent with Judge Zagel's statement at sentencing: "I don't think we have to pause to consider which of the variety of ways we arrive at offense level 51 because I think we pretty much arrive at a number that is in excess of 43 [at which a life sentence is mandatory] no matter how one calculates it." (Sentencing Tr. at 7:3–10.)

In his motion for a reduced sentence under 18 U.S.C. § 3582(c)(2) [5785], Knox notes that Amendment 782 to the sentencing guidelines lowered the base sentencing level for his drug offenses from Level 36 to Level 34. Thus, Knox argues, the court should reduce his narcotics conspiracy life sentence as well as his RICO conspiracy life sentence, which he claims is predicated solely on his drug charges. On September 3, 2020, Knox also filed a motion for compassionate release [6060] based on the COVID-19 pandemic and a number of underlying health conditions such as diabetes and high blood pressure. (Knox CR Mot. at 4.) He also reports "taking nine different medications a day," having "a thyroid condition," and having "a hard time breathing at night." (*Id.*) Before filing this motion, Knox first applied for such relief from his warden, who rejected that application on April 27, 2020. (Ex. 1 to Knox CR Mot. [6060-1] at 1–2.)

## DISCUSSION

### A.   18 U.S.C. § 3582(c)(2)

Under 18 U.S.C. § 3582(c)(2), a district court may reduce a defendant's sentence if that defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2). Amendment 782 to the sentencing guidelines became effective in November 2014, decreasing

the sentencing level for a variety of drug offenses by two levels and making such variations retroactive. *United States v. Guerrero*, 946 F.3d 983, 985 (7th Cir. 2020).

Amendment 782 is relevant to the life sentence he received for narcotics conspiracy, Knox argues. He contends that Judge Zagel held him responsible for distribution of 10 kilograms of heroin which, at the time, corresponded with a base sentencing level of 36. Amendment 782 subsequently decreased the base sentencing level for 10 kilograms of heroin to level 34. *See* U.S.S.G. § 2D1.1(c)(3). After enhancements, he urges, his adjusted offense level would be 40, not 42. And while Amendment 782 would only directly affect Knox's narcotics conspiracy sentence, he contends it could support a reduction in the life sentence for RICO conspiracy as well. He notes, as Judge Kennelly observed in an opinion addressing Knox's § 2255 petition, that "[t]he statutory maximum sentence for RICO conspiracy is ordinarily 20 years; a life sentence may be imposed only if the penalty for one of the underlying racketeering acts is life." *United States v. Knox*, No. 02 C 7392, 2003 WL 22012680, at *6 (N.D. Ill. Aug. 26, 2003) (citing 18 U.S.C. § 1963). Therefore, if as Knox argues, the RICO conspiracy life sentence is predicated solely on the narcotics conspiracy life sentence, then any reduction in Knox's narcotics conspiracy life sentence, should also apply to his RICO conspiracy life sentence.

Not so, says the government. True, Knox's RICO conspiracy life sentence *could have* been independently supported by these predicate drug acts, but the sentence could just as easily have been supported by predicate acts of murder. According to the government, the jury found Knox responsible for three separate murders and attempted murders, that each of these three racketeering acts of murder carried an offense level of 47—a base level of 43 plus a 4-level increase for Knox's leadership role—and that these three murder racketeering acts combine to produce an offense level total of 51 under U.S.S.G. § 3D1.4. (Govt. Resp. at 4–5.) This aligns with Judge Zagel's statement at sentencing noting "the variety of ways we arrive at offense level 51 . . . . " (Sentencing Tr. at 7:3–10.) If the government's version of the facts is accurate, Knox's underlying murder racketeering acts could independently support a life sentence for RICO

4

conspiracy and, therefore, even a reduction in Knox's narcotics conspiracy sentence would not affect his RICO conspiracy life sentence.

The court would expect it would be a simple matter to confirm this. Yet, despite multiple opportunities, the government has not produced records that support its assertions. The government's initial response brief cited to a June 9, 1997 Supplemental Presentence Report ("PSR"), but the government did not furnish a copy of that document, and it is not accessible in the record.[2] (*See, e.g.*, Govt. Resp. at 2.) The court then directed the government to submit a supplemental response to Knox's motion for sentence reduction, asking for "clarification of the offense conduct underlying Mr. Knox's RICO conviction, with appropriate record citations." (RICO Order [5959].) In response to the order, the government referenced five documents: (1) the Statement of Facts portion of the government's brief in Knox's direct appeal in *United States v. Boyd*, 208 F.3d 638 (7th Cir. 2000); (2) the Supplemental PSR from September 17, 1997; (3) a Supplemental PSR from June 9, 1997; (4) the above-referenced transcript of Knox's sentencing hearing before Judge Zagel; and (5) the Statement of Reasons page that accompanied the Judgment and Commitment Order. (Govt. RICO Resp. [5960] at 1–2.) Disappointingly, however, the government attached just two of those documents (documents (1) and (4)). Despite the court's requests, no additional documents have been submitted.

For his part, Knox insists the RICO conspiracy life sentences rested on narcotics distribution. Though he also has not supported his argument with documents, this court notes that when Judge Kennelly of this court ruled on Knox's § 2255 petition in 2004, he made the following comment about Knox's RICO conviction:

> Claim 3 involves a challenge to Knox's life sentence for RICO conspiracy. The statutory maximum sentence for RICO conspiracy is ordinarily 20 years; a life sentence may be imposed only if the penalty for one of the underlying racketeering acts is life. 18 U.S.C. § 1963. This claim depends entirely on the merits of claim

---

[2] Docket number 5235 from April 29, 1998 is labeled "PRESENTENCE Report – sealed on Sammy Knox and other." It is possible that this docket entry might refer to the June 9, 1997 Supplemental Report, but the corresponding document has not been uploaded to the docket.

>two, the *Orozco–Prada* issue that we have just discussed. If Knox prevails on that claim, he will likewise prevail on claim 3.

*United States v. Knox*, 2003 WL 22012680, at *6. Because *United States v. Orozco-Prada*, 732 F.2d 1076, 1084 (2d Cir. 1984) is a case that addresses the requirement that a jury make drug quantity findings, Judge Kennelly must have believed that Knox's RICO conviction rested solely on an underlying narcotics offense rather than murder.

In the end, however, even if his life sentence rests on narcotics predicate acts, the court is unable to conclude that Amendment 782 affects Knox's sentencing range. The parties agree that Knox's narcotics conspiracy offense originally supports an offense level of 42 (base level 36 plus 6 points in enhancements). (Knox Mot. at 3 n.1; Govt. RICO Resp. at 4.) With his Criminal History Category III, an adjusted offense level of 42 results in a sentencing range of 360 months to life. U.S.S.G. Ch. 5, Pt. A. If Judge Zagel in fact relied on narcotics trafficking as the relevant predicate acts, he nevertheless sentenced Knox to the upper bound of that range. After Amendment 782 reduced Knox's base offense level from 36 to 34, Knox's new overall sentence would fall in the Level 40 sentencing range. For a criminal defendant with a criminal history category of III, the Level 40 range is *identical* to the Level 42 range: 360 months to life. U.S.S.G. Ch. 5, Pt. A. Given that 18 U.S.C. § 3582(c)(2) applies only to defendants who have "been sentenced to a term of imprisonment based on *a sentencing range that has subsequently been lowered*" by an amendment to the guidelines, that subsection provides Knox with no relief here. 18 U.S.C. § 3582(c)(2) (emphasis added).

The Seventh Circuit explained exactly that in *United States v. McCarroll*, 811 F.3d 975, 977 (7th Cir. 2016). There, as here, defendant drug conspirator had a Criminal History Category of III and an adjusted offense level of 42, resulting in an applicable guidelines range of 360 months to life. *Id.* The defendant there argued that he qualified for a sentence reduction under 18 U.S.C. § 3852(c)(2) based on the 2-point reduction from Amendment 782, even though he would face the same guidelines range of 360 months to life after Amendment 782 reduced his offense level

6

to 40. *Id.* The Seventh Circuit rejected this argument, explaining that "[t]he 'sentencing range' that must have been changed to permit relief under § 3582(c)(2) is not the base offense level or any other intermediate step in the guideline calculation, but the bottom-line, final range that was the basis for the sentence." *Id.* (quoting *United States v. Taylor*, 778 F.3d 667, 672 (7th Cir. 2015)).

Knox separately argues that he was sentenced under Criminal History Category III but was in fact only in Category II. If this were true, then Amendment 782 would reduce Knox's sentencing range from 360 to life—under Level 42—to between 324 and 405 months—under Level 40. U.S.S.G. Ch. 5, Pt. A. But such a complaint is not properly brought under 18 U.S.C. § 3582(c)(2). Knox's sentence was affirmed on appeal in *United States v. Boyd*, 208 F.3d 648, 649 (7th Cir. 2000). His petition for relief pursuant to 28 U.S.C. § 2255 was denied in 2004. *United States v. Knox*, No. 03 C 7392, 2004 WL 442629 (N.D. Ill. Mar. 9, 2004). That opinion, too, was affirmed. *Knox v. United States*, 400 F.3d 519 (7th Cir. 2005). Any effort to seek reconsideration of the Criminal History calculation would constitute a second and successive post-conviction challenge pursuant to 28 U.S.C. § 2255 which the court will not entertain absent approval from the Seventh Circuit. 28 U.S.C. § 2255(h).

In any case, Knox's Criminal History challenge has no merit. Knox submitted the second page of the government's "Criminal History Worksheet" that he believes supports his conclusion that he should have been assigned just three criminal history points, placing him at Criminal History Category II. (Knox Mot. at 7.) That page notes that Knox was assigned two points for having committed the offenses at issue while under another criminal justice sentence and one more point for having committed the offense within two years of having been released from another prison sentence. Knox appears to have overlooked the first page of the document, which he did later submit in an August 6, 2019 letter to the court. (August 6, 2019 Letter [6010] at 3.) As that page shows, Knox has three additional criminal history points for previous offense

conduct. The sentencing court correctly assigned a total of six criminal history points, placing Knox at Criminal History Category III.

The court denies Knox's request for a reduced sentence under 18 U.S.C. § 3582(c)(2).

**B.      Compassionate Release**

Next, Knox seeks compassionate release from his sentence under 18 U.S.C. § 3582(c)(1)(A). (Knox CR Mot. [6060] at 1.) Under that subsection, a district court may reduce the term of a defendant's imprisonment upon the defendant's motion[3] if the court finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) such a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a), and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Relevant § 3553(a) factors include "the nature and circumstances of the offense," the "history and characteristics of the defendant," and the need for the sentence to "reflect the seriousness of the offense," "provide just punishment for the offense," and "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2).

Knox asks the court to grant compassionate release based on the combination of the COVID-19 pandemic and a number of personal medical problems. Knox is a 68-year old African American man who, according to his motion, suffers from high blood pressure, diabetes, high cholesterol, and a thyroid condition. (Knox CR Mot. at 4.) Knox also reports taking nine different

---

[3] It bears noting that the provision of 18 U.S.C. § 3582(c)(1)(A) allowing the court to consider a motion brought by defendant on his own behalf applies only to sentences for offenses completed *after* November 1, 1987, so-called "new law" offenses. *See, e.g.*, *United States v. Matta-Lopez*, LA CR85-00606 JAK (1), 2020 WL 2128644, at *3–4 (C.D. Cal. May 4, 2020) (denying motion for compassionate release because "a person in custody cannot bring a motion on his or her own behalf with respect to criminal conduct that occurred prior to November 1, 1987. . . . The relief requested can only be considered through a motion brought by the BOP.") For defendants who completed their offenses before November 1, 1987, so-called "old law" offenses, compassionate release motions must come from the Bureau of Prisons. *Id.* Here, while Knox's murder conspiracy offense was an "old law" offense ending on April 30, 1985 (Knox Sentencing at 1), both remaining sentences—the life sentences on his RICO conspiracy and narcotics conspiracy counts—are "new law" offenses, ending on March 9, 1989. (Knox Sentencing at 1.) The court can thus consider Knox's compassionate release motion brought on his own behalf.

medications a day and having a hard time breathing at night. (*Id.*) The government concedes that Knox has met the "extraordinary and compelling reason" requirement for compassionate release given his diagnosis of Type 2 diabetes—a COVID-19 risk as identified by the CDC. (Govt. CR Resp. [6083] at 12.); *see* U.S.S.G. § 1B1.13 (noting that extraordinary and compelling reasons exist where the defendant is "suffering from a serious physical or medical condition" or a condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"). Knox has been incarcerated for 31 years, and his 2014 progress report displays little to no disciplinary history. (Knox Mot. at 16–17, 21.)[4] The government nevertheless objects to Knox's request for release as inconsistent with § 3553(a) factors. In particular, the government emphasizes the serious nature of Knox's crimes, noting that he "served as a leader of one of the most prolific and vicious gangs ever to have terrorized the streets of Chicago," was "responsible for distribution [of] huge quantities of illegal narcotic drugs," and was convicted for murder conspiracy. (Govt. CR Resp. at 13–14.)

In weighing these factors, the court notes that circumstances relating to the pandemic have changed over time. As of September 7, 2021, Pekin FCI (where Knox is held) has only three confirmed active cases of COVID-19; one inmate and two staff. https://www.bop.gov/coronavirus/ (last visited Sept. 7, 2021). Moreover, the Bureau of Prisons has administered more than 215,000 doses of the COVID-19 vaccine nationwide, including to 123 staff members and 673 inmates at Pekin who have been fully vaccinated. *Id.* While the records do not show whether or not Knox himself is fully vaccinated, the court is unaware of any legitimate reason why he would not be at this point. *See, e.g.*, *United States v. Broadfield*, 5 F.4th 801, 803

---

[4] Knox states in his brief that he has had two incident reports while incarcerated but notes that the last one occurred over 22 years ago. (Knox Mot. at 5–6.) It is not clear whether the October 2014 progress report reflects these incident reports. The court presumes Knox is referring to two "Case Management Assignments" labeled "V94 CURR VIOL BEFORE 91394" and "V94 CURR DRG TRAF BEFORE 91394," each dated February 7, 1998, though it is not clear from the document whether these denote incident reports. (*Id.* at 16–17.)

(7th Cir. 2021) (declining to find vaccine skepticism as an adequate explanation for remaining unvaccinated). While the court is aware that the vaccine is not perfect and that the risks of COVID-19 are far from eliminated, the risks faced by Knox today may well be less serious than they were when he filed this motion.

The Seventh Circuit concluded recently that "the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 801 (7th Cir. 2021). Yet there may be some remaining uncertainty on this score. *See, e.g.*, https://www.cdc.gov/media/releases/2021/s0818-covid-19-booster-shots.html (last visited Sept. 7, 2021) ("Based on our latest assessment, the current protection against severe disease, hospitalization, and death could diminish in the months ahead, especially among those who are at higher risk . . . . For that reason, we conclude that a booster shot will be needed . . . ."). On the current record, the court is unable to make a final determination concerning the severity of Knox's medical conditions, how well he is able to manage those conditions while incarcerated, and whether or not he has been vaccinated. The government is therefore directed to obtain and file Mr. Knox's medical records while in custody as well as his disciplinary records, under seal. His filing of this motion constitutes a limited waiver of his right to confidentiality in those records.[5]

## **CONCLUSION**

For the foregoing reasons, the court denies Defendant Knox's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) [5785]. The court reserves ruling on Knox's motion for compassionate release under § 3582(c)(1)(A) [6060] pending review of relevant medical records and a current record of his disciplinary history. The court directs the government to produce those materials for the court's review in 21 days.

---

[5] Knox also asks this court to grant him release to home confinement with electronic monitoring. (Knox CR Mot. at 20.) The authority to grant such a request, however, lies not with the district courts but with the Bureau of Prisons. 18 U.S.C. § 3624(c)(2).

ENTER:

Dated: September 7, 2021

_____
REBECCA R. PALLMEYER
United States District Judge

11